UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 16-40154

| | |
|---|---|
| UNUM GROUP,<br>      Plaintiff<br><br>V.<br><br>TIMOTHY P. LOFTUS,<br>      Defendant | **MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiff, Unum Group ("Unum") moves this Court to grant a preliminary injunction to protect Unum's trade secret information. Unum discovered through video surveillance that Defendant, Timothy Loftus, a former employee of Unum, surreptitiously stole boxes and bags of documents and a company-issued laptop from Unum's headquarters. It is almost certain that the documents and computer files contain Unum's trade secret information and the confidential, personal/medical information of Unum's customers and employees.

Defendant refused to return the documents or laptop, despite repeated demands to do so. In defiance of directives from Unum's counsel, Defendant's counsel is *copying* the loads of documents stolen from Unum. Defendant's counsel ultimately – and quite belatedly – released the laptop to Unum's counsel, but is now demanding to receive a mirrored copy of the hard drive – including files that contain trade secret information, stating to Unum's counsel: "What you get – I get. If you don't agree with that then you get nothing . . ."

As set forth fully herein, Unum seeks a preliminary injunction to protect its trade secret information protected by the Defend Trade Secrets of 2016.

**FACTS**

1. **Unum's Trade Secret Information**

Unum is a leading provider of disability benefits, as well as a variety of other financial protection benefits, including voluntary benefits, whole and universal life insurance, critical illness benefits, accident coverage, and dental benefits. See Affidavit of Holly Haynes, attached hereto as Exhibit A ("Haynes Aff."), ¶ 2. As the leading provider of financial protection benefits to thousands of customers, Unum has access to confidential information regarding its customers, policyholders, applicants for insurance coverage, and parties with whom it does business ("Confidential Customer Information"). Id. ¶ 3. The market for financial protection benefits is highly competitive. There are a multitude of other companies, each offering their own financial protection benefits, competing for the same customers and market share as Unum. Id. ¶ 4.

Unum's success is dependent on its ability to protect its customers' confidential information, as well as its own confidential, proprietary, and trade secret information. Id. ¶ 5. Unum's confidential, proprietary, and trade secret information includes, but is not limited to, its financial, business, technical, and economic information; the names of any of its customers; products; claims practices; pending litigation or litigation strategies; reserves; services; research; data bases; computer software; business or marketing plans; intellectual property; the prices it obtains or has obtained or at which it sells or has sold its products; medical and other private information about people or companies with whom Unum does business, including insureds, customers, employees, producers, and suppliers; information that is provided to Unum on the condition that it is kept confidential, such as licensed computer software plans; and any other information of, about, or concerning the business of Unum, its manner of operation, strategic

direction, and/or its plans (collectively, "Trade Secret Information"). Id. ¶ 6. The value of Unum's Trade Secret Information is derived from its exclusive use by Unum. Id. ¶ 7.

Unum relies on a combination of copyright, trademark, and trade secret laws, as well as confidentiality agreements and confidentiality policies to establish and protect its Trade Secret Information and Confidential Customer Information. Id. ¶ 8. For example,

- Unum's Confidentiality/Non-Disclosure Policy provides, in relevant part, that employees may not use Unum's confidential information to disadvantage the company and that Unum can discipline employees who fail to respect the confidential nature of information. See Exhibit B;

- Unum's Code of Conduct provides, in relevant part, that employees must "[a]lways manage personal data responsibly and in compliance with privacy laws and our company policies," and that they may "[n]ever disclose any private, sensitive, secret or confidential information outside of the company . . ." See Exhibit C;

- Unum's Electronic Communications Policy provides, in relevant part, that access to electronic communication systems are limited to "authorized users for their use in performing their job responsibilities" and that it is a prohibited practice to use the email system to "leak confidential, sensitive, proprietary information, or for any other inappropriate or unlawful purpose." See Exhibit D; and

- Unum's Appropriate use of Business Assets Policy provides, in relevant part, that computing resources "are provided to authorized Unum information users for business use" and that "unethical or 'inappropriate' use of company assets will not be tolerated and will be the subject of disciplinary action up to and including termination of employment." See Exhibit E.

Unum reminds its employees of the confidential nature of the Trade Secret Information and Confidential Customer Information by requiring them to review and attest to their review of Unum's Code of Conduct each year. Haynes Aff. ¶ 9. In addition to the protective measures described above, Unum restricts access to its Trade Secret Information, Confidential Customer Information, and Confidential Employee Information by, for example, requiring encryption of external devices (such as flashdrives), utilizing software to monitor when/how Confidential Customer Information is sent outside of Unum, and requiring employees to encrypt Confidential Customer Information before it is sent to a third party. Id. ¶ 10. As clearly reflected in the stills of the video surveillance attached hereto and described below, Unum also takes physical protective measures, such as locked doors, key card access, and video surveillance.

### 2.  **Defendant's Employment with Unum**

Defendant was hired by Unum on September 9, 1985. As a condition of his employment, on October 10, 1988, Defendant executed a Confidentiality Agreement, which provides, in relevant part:

> a. You will keep in strictest confidence all information identified as confidential . . . relating in any way to the business and affairs of [Unum] which you may acquire in connection with or as a result of your employment . . .
>
> c. You will not, except as may be required by your employment with [Unum], duplicate, disclose or reveal to anyone such information without the prior written consent of [Unum]; . . .

See Exhibit F.

In or around, December 2004 Defendant was promoted to Director of Individual Disability Insurance ("IDI") Benefits. Haynes Aff. ¶ 11. As the Director of IDI Benefits, Defendant's job duties included, but were not limited to, "managing a team of employees that are responsible for quality management of complex IDI claims for an assigned block of customers,"

"achieving a high level of quality and customer satisfaction," "attracting, developing, and retaining professional claims resources," "be[ing] involved in daily activities and decisions associated with claims," "ensur[ing] all appropriate actions are taken and all information is received on claims before a decision is made," and "participat[ing] in development of regional specific business plans." See Director, IDI Benefits Job Description, attached hereto as Exhibit G. Accordingly, as the Director of IDI Benefits, Defendant had access to (a) Confidential Customer Information; (b) Unum's Trade Secret Information; and (c) confidential information of Unum's employees ("Confidential Employee Information"). Haynes Aff. ¶ 12.

On August 29, 2016, Defendant attested to his receipt of the Code of Conduct, which contains policies regarding confidentiality and security as described above.[1]  Id. ¶ 14. On April 6, 2016, Defendant attended the 2016 Privacy & Information Security Training, which emphasizes the paramount importance of safeguarding confidential and private information of customers and Unum's Trade Secret Information. Id. ¶ 15.

### 3. **Defendant's Wrongful Conduct.**

#### i. **Investigatory Interview**

Defendant was interviewed by Unum's inside counsel as part of an internal investigation into claims practices on Wednesday, September 21, 2016. Affidavit of Charlie Ryder, attached hereto as Exhibit H ("Ryder Aff."), ¶ 2. Defendant was informed and understood that if he "provide[d] incomplete or untruthful information during [the] interview, [he] will be subject to disciplinary action, including termination from employment." See Exhibit I. Defendant did not fully cooperate in the investigation and provided false and misleading responses to specific questions. Ryder Aff. ¶ 2.

---

[1] Defendant agreed to abide by Unum's Privacy, Ethics, and Confidentiality policies in 1988, 1999, 2006, 2010, and every year from 2011 through 2016. See Haynes Aff. ¶ 13.

### i.      Sunday, September 25, 2016

A few days after he provided false and misleading answers in Unum's investigatory interview, Defendant went to Unum's Office on Sunday, September 25, 2016 – which is not his usual workday – and entered the building at 12:40 p.m. with, what appeared in the security video to be, an empty box. See Exhibit J. Nine minutes later, Defendant left Unum's Office with a full box and brought the box to his car. See Exhibit K. Empty handed, Defendant then re-entered Unum's Office at 12:52 p.m. See Exhibit L. Over one hour later, at 2:09 p.m., Defendant left Unum's Office with a *second* full box of documents, as well as a full briefcase, and brought the box and briefcase to his car. See Exhibit M. Defendant did not re-enter Unum's Office. Defendant had no legitimate business reason to remove at least two boxes of documents from Unum's Office on Sunday, September 25, 2016.

### ii.     Tuesday, September 27, 2016

On Tuesday, September 27, 2016, Defendant worked at Unum, arriving at 9:53 a.m. and leaving sometime after 3:44 p.m. Ryder Aff. ¶ 3. After leaving for the day, Defendant returned to Unum's Office at approximately 7:45 p.m. Id. After spending approximately one hour inside, Defendant left Unum's Office with a shopping bag full of documents and a full briefcase. See Exhibit N. Defendant had no legitimate business reason to remove a shopping bag full of documents from Unum's Office at night on Tuesday, September 27, 2016.

### iii.    Thursday, September 29, 2016

On Thursday, September 29, 2016, Charlie Ryder, Lead Investigative Consultant, spoke with Defendant via telephone at approximately 10:00 a.m. as part of Unum's investigation into Defendant's removal of documents on Sunday, September 25 and Tuesday, September 27, 2016 from Unum's Office. Ryder Aff. ¶ 5.

During the interview, Defendant admitted to taking items from Unum's Office on Sunday, September 25, 2016, but denied even being in the office on Tuesday, September 27, 2016 (which is refuted by the video evidence). Id. When asked by Mr. Ryder about the large number of documents Defendant had printed and taken from Unum, Defendant admitted to printing documents and then refused to cooperate further in the investigation on, he said, his attorney's advice. Id.

Shortly after refusing to cooperate further in the investigation into his removal of boxes and bags of documents, Defendant left Unum's Office with the laptop provided to him by Unum ("Unum's Laptop") for business, as well as a shopping bag, which appeared to be full. See Exhibit O. Defendant had no legitimate business reason to take Unum's Laptop out of Unum's Office on Thursday, September 29, 2016.

As described above, on September 25, 27, and 29, 2016, Defendant removed two boxes and two shopping bags of documents from Unum's Office, as well as documents contained in his briefcase which he removed from Unum's Office on the three occasions described above (collectively, "Unum's Documents"). It is highly likely that Unum's Documents and Unum's Laptop contain Confidential Customer Information, Confidential Employee Information, and/or Trade Secret Information. Ryder Aff. ¶ 6.

**4.      Unum's Demands for Return of Unum's Laptop and Unum's Documents.**

At approximately 12:00 p.m. on September 29, 2016, Janine Hughes Goldberg, a Senior Employee Relations Consultant, and Holly Hayes, Assistant Vice President Employee Relations, telephoned Defendant and asked him to return Unum's Laptop. Defendant agreed to do so. Haynes Aff. ¶ 16. Despite informing Ms. Goldberg and Ms. Hayes that he would return Unum's Laptop on September 29, 2016, Defendant failed to do so. Id. ¶ 17.

At approximately 3:00 p.m. on September 29, 2016, Defendant's then-attorney, Keith Higgins, called Unum and spoke with Ellen Donovan McCann, Esq., Assistant Vice President and Senior Counsel of Unum's Law Department. Attorney Higgins represented to Attorney McCann that Defendant would return Unum's Laptop by the end of the day. Despite this representation, however, Defendant did not return Unum's Laptop to Unum.

On October 4, 2016, Attorney McCann wrote to Attorney Higgins to again demand the return of Unum's Laptop and Unum's Documents. See Exhibit P. On October 5, 2016, Defendant's new attorney, Roy Bourgeois, sent Attorney McCann a letter, in which he stated that he had taken custody of "certain items and a computer," and indicated that he would not return the "items" and Unum's Laptop unless (a) they were held in escrow; and (b) Unum provided him with copy of the Upjohn warning signed by Defendant. See Exhibit Q.

On October 7, 2016, Unum's outside counsel, Jonathan Sigel, responded to Attorney Bourgeois and gave assurance that the documents and laptop would be held at Mirick O'Connell and provided a copy of the Upjohn Warning. See Exhibit R. Having satisfied Attorney Bourgeois demands, Attorney Sigel demanded the return of Unum's Documents and Unum's Laptops, together with a signed representation by Defendant and Attorney Bourgeois that they had not retained or destroyed any of the documents or files. Id.

Despite having his demands satisfied, Attorney Bourgeois wrote to Attorney Sigel on October 12, 2016, and stated that he "simply" would not return Unum's Laptop or Unum's Documents because, he contended, Unum did not provide an assurance that its own laptop, files, and documents would be safeguarded. See Exhibit S.

On October 14, 2016, Attorney Sigel expressly stated that Mirick O'Connell would maintain Unum's Laptop and Unum's Documents "in its custody and not destroy or alter them in

any way pending the resolution of this matter." See Exhibit T.  Since Unum provided the requested, repeated assurance, Attorney Sigel demanded the immediate return of Unum's Laptop and Unum's Documents taken by Defendant. Id.

On October 18, 2016, Attorney Bourgeois continued his practice of moving the goal posts, when he wrote to Attorney Sigel and, despite receiving Unum's assurance as he requested in his prior letter, refused to return Unum's Laptop unless Unum executed an Agreement.  The Agreement requires Unum to "negotiate in good faith" *with Defendant* "a protocol for electronic access to, and duplication of, the information stored on" Unum's Laptop and provided that Unum's Laptop would be "equally available" to Defendant. See Exhibit U.  With respect to Unum's Documents, Attorney Bourgeois stated that they would be "dealt with" by copying and bates stamping them, at some point. Id.

On Friday, October 21, 2016, Unum's outside counsel, Amanda Marie Baer, spoke with Attorney Bourgeois and stated that she would sign the Agreement for the return of Unum's Laptop.  With respect to the documents, Attorney Baer explained, over the phone and in an email, that Unum has responsibilities under Massachusetts law to safeguard its documents and files that contain personal information regarding Massachusetts residents. Exhibit V.  Attorney Baer stated that Defendant exceeded his authority with respect to Unum's Documents when he removed them from Unum's Office and then refused to return them to Unum despite repeated demands to do so. Id.  Attorney Baer demanded the immediate return of Unum's Documents so that she could review them to determine if any redactions of Confidential Customer Information, Confidential Employee Information, and/or Trade Secret Information needed to be made. Id.  Defendant's counsel responded by stating that he did not trust Attorney Baer to make a complete copy of Unum's Documents.

On Monday, October 24, 2016, Attorney Baer took custody of Unum's Laptop (and noted that the bag also contained a flash drive, the existence of which was not previously disclosed to Unum). Attorney Baer also demanded the immediate return of Unum's Documents, and offered for Defendant's counsel to *watch* while Unum's Documents were copied so that Defendant could be assured that a complete copy was made. See Exhibit W. Defendant's counsel responded to Attorney Baer's email and explained that – despite Attorney Baer's explicit instructions otherwise – he was making copies of Unum's Documents. Exhibit X.

It is necessary for Unum to do a forensic review of Unum's Laptop in order to determine if any Trade Secret Information, Confidential Customer Information, and/or Confidential Employee Information has been improperly accessed by Defendant and/or his attorney. Attorney Baer proposed using an independent third party expert to create a mirrored copy of hard drive, and Attorney Bourgeois agreed. However, Attorney Bourgeois is now demanding that he also receive an exact copy of Unum's Laptop (as he stated, "What you get – I get. If you don't agree with that then you get nothing . . .") – even before Unum has the opportunity to determine whether any statutorily protected information is contained in the files. See Exhibit Y.

**5.    Unum's Complaint.**

On October 25, 2016, Unum initiated the above-captioned action against Defendant, asserting claims under the federal Defense of Trade Secrets Act of 2016, the Massachusetts Trade Secrets Act, and common law conversion.

**6.    Defendant's Termination from Employment**.

Based on Defendant's incomplete and untruthful information provided during the interview, as well as his removal and refusal to return Unum's Documents and Unum's Laptop, Unum terminated his employment on October 24, 2016. Haynes Aff. ¶ 18.

**ARGUMENT**

1. **Standard of Review**

In determining whether to issue a preliminary injunction, the Court weighs four factors: "(1) the movant's likelihood of success on the merits, (2) the potential for irreparable harm [if the injunction is denied], (3) a balancing of the relevant equities, and (4) the effect on the public interest." Riverdale Mills Corp. v. Cavatorta N. Am., Inc., 146 F.Supp.3d 356 (D. Mass. 2015) (quoting Campbell Soup Co. v. Files, 47 F.3d 467, 470 (1st Cir. 1995)). "The sine qua non of this four-part inquiry is likelihood of success on the merits[.]" New Comm. Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002). As set forth below, Unum can establish all four factors and, therefore, the Court should order Defendant to return Unum's Documents and any and all additional documents or files containing Unum's Trade Secret Information. See e.g., UBS Painwebber, Inc. v. Aiken, 197 F.Supp.2d 436, 446-47 (W.D.N.C. 2002) (stating that defendants "abscond[ed] from [plaintiff's] office with tangible personal property on which [trade secret] information is stored "physically or electronically" and ordering defendants to return "documents, computer disks, or other material which rightfully belongs to [plaintiff]").

As set forth below, a preliminary injunction (a) enjoining Defendant from making copies of Unum's Documents; (b) compelling Defendant to return all of Unum's Documents, and any other documents that contain Trade Secret Information, to Unum's counsel with a representation that they have not altered, destroyed, disclosed, or copied any of Unum's Documents or any other documents that contain Trade Secret Information; and (c) permitting Unum to review the contents of Unum's Laptop to remove/redact (from a mirrored copy) Trade Secret Information and prior to providing the mirrored copy to Defendant, should be issued. Unum is likely to succeed on the merits of its misappropriation claim brought under the Defense of Trade Secrets

Act of 2016, because Defendant misappropriated Unum's Trade Secret Information when he stole and refused to return Unum's Documents and Unum's Laptop. Unum's entitlement to a preliminary injunction is further supported by the public interest, as Massachusetts has a clear public policy in favor of protecting trade secret information. Given the nature of the information, it is undisputed that Unum has suffered a substantial injury that cannot be remedied by monetary damages and that the balance of equities is in Unum's favor.

Moreover, and as unique to this matter due to the nature of Unum's business and Defendant's access to information, it is highly likely that Unum's Documents and Unum's Laptop contain Confidential Customer Information and/or Confidential Employee Information. Therefore, Unum must be able to review the documents and files to determine if breach notifications under the Massachusetts Privacy Act and/or the HIPAA Breach Notification Rule should be issued to Massachusetts residents, citizens of the United States, the Massachusetts Attorney General, and/or any other applicable federal agencies. As it stands, by refusing to turn over Unum's Documents and demanding a copy of Unum's Laptop, Defendant is absolutely precluding Unum from evaluating its responsibilities under such laws. A preliminary injunction that allows Unum to comply with such privacy laws and prevents Defendant from further accessing the protected information of innocent third parties is undoubtedly in the public interest.

### 2. **Unum is Likely To Succeed on the Merits of Its Misappropriation Claim**

In relevant part, Unum has asserted a claim for misappropriation of trade secrets under the federal Defense of Trade Secrets Act of 2016 ("DTSA"). Under the DTSA, "[a]ctual or threatened misappropriation" may be enjoined and the Court may require "affirmative actions to be taken to protect the trade secret." See 18 U.S.C. § 1836(3)(A)(i), (ii).

Pursuant to the DTSA, prohibited "misappropriation" includes the acquisition of a trade secret of another. 18 U.S.C. § 1839(5)(A). A "trade secret" is defined by the DTSA to include:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if –
>
> (A) the owner thereof has taken reasonable measures to keep the information secret; and
>
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]

18 U.S.C. § 1839(3).

As set forth above, Defendant, as the Director of Individual Disability Insurance ("IDI") Benefits, had access to Unum's confidential, proprietary, and Trade Secret Information, including, but not limited to, its financial, business, technical, and economic information; the names of any of its customers; products; claims practices; pending litigation or litigation strategies; reserves; services; research; data bases; computer software; business or marketing plans; intellectual property; the prices it obtains or has obtained or at which it sells or has sold its products; medical and other private information about people or companies with whom Unum does business, including insureds, customers, employees, producers, and suppliers; information that is provided to Unum on the condition that it is kept confidential, such as licensed computer software plans; and any other information of, about, or concerning the business of Unum, its manner of operation, strategic direction, and/or its plans. Such information constitutes "trade

secrets" under the DTSA.  See e.g., Earthbound Corp. v. MiTek USA, Inc., 2016 WL 4418013 (W.D. Wash. Aug. 19, 2016).

Unum's Trade Secret Information is valuable and crucial to the business functions and competitive position of Unum.  Accordingly, Unum relies on a combination of copyright, trademark, and trade secret laws, as well as confidentiality agreements and confidentiality policies, to establish and protect its Trade Secret Information.  In addition to requiring employees – including Plaintiff – on an annual basis, to review and attest to the Code of Conduct and partake in a Privacy & Information Security Training session, which details employees' responsibilities to maintain the confidentiality of Trade Secret Information, Unum restricts access to its Trade Secret Information by, for example, requiring encryption of external devices, utilizing software to monitor how/when confidential information is sent outside of Unum, and requiring employees to encrypt confidential information before it is sent to a third party.  Unum also has physical security in place, such as locked doors, restricted key card access, and surveillance, to protect its Trade Secret Information.

Defendant misappropriated the Trade Secret Information when he removed two boxes, two shopping bags, and three briefcases full of Unum's Documents and Unum's Laptop from Unum, without any legitimate business reason for doing so and without Unum's consent. Certainly, any arguable business reason Defendant had for taking Unum's Documents and Unum's Laptop expired when Defendant was suspended on September 29 and *terminated* on October 24, 2016.  As a former employee of Unum, Defendant has no right to retain and copy Unum's Documents or demand a copy of Unum's Laptop.

Unum has repeatedly demanded the return of Unum's Documents and Unum's Laptop, but Defendant refused to return Unum's Laptop unless Unum agrees to grant him rights to the

computer.  Defendant has no right to make demands regarding Unum's treatment and disposition of its own computer and the information contained thereon.  Despite this, Unum has agreed that its undersigned counsel will keep Unum's Laptop pending resolution of the matter.  Now, Unum wishes to utilize an independent third party forensic analyst to make a mirrored copy of Unum's Laptop so that it may determine what it contains.  Defendant is demanding to receive an identical mirrored copy.

Meanwhile, Defendant has absolutely refused to return Unum's Documents.  In fact, Defendant has indicated that he is reviewing and *copying* all of the documents – against Unum's express instructions.  As repeatedly stated by Unum's undersigned counsel, Defendant has no right to make a copy of Unum's Documents, which likely contain Unum's Trade Secret Information, because he exceeded his authorization as an employee of Unum when he removed the documents from Unum's Office without any legitimate reason to do so and failed and refused to return Unum's Documents despite repeated, unequivocal demands.

At no time has either Defendant or his counsel provided any basis that would legally justify Defendant's clear theft of Unum's Laptop and Unum's Documents.  Likewise, neither Defendant nor his counsel has affirmatively stated (nor could they possibly state) that Unum's Laptop and Unum's Documents stolen do not contain confidential information and/or Trade Secret Information solely belonging to Unum.  Notably, neither Defendant nor his counsel has asserted any ownership rights in the stolen property.  The reason for this is clear – they have no such rights.  Accordingly, Unum is likely to succeed on its DTSA claim against Defendant.

### 3. Unum will Suffer Irreparable Harm if an Injunction Does Not Issue

Unum will suffer irreparable harm if an injunction does not issue.  Irreparable harm is "a substantial injury that is not accurately measurable or adequately compensable by money

damages." Ross-Simon of Warwick, Inc., 109 F.3d at 19. "When a plaintiff demonstrates likelihood of success on a misappropriation of trade secrets claim, it need not prove irreparable injury because such harm is presumed." EchoMail, Inc. v. Am. Express Co., 378 F.Supp.2d 1, 4 (D. Mass. 2005); Optos, Inc. v. Topcon Med. Sys., Inc., 777 F.Supp.2d 217 (D. Mass. 2011).

Even if irreparable harm is not presumed as a matter of law, Unum has established that it will suffer such harm. Defendant's actions in stealing boxes and bags of Unum's Documents and Unum's Laptop establishes a plausible threat that he will use the information contained thereon to Unum's disadvantage by, for example, undermining Unum's business and customer relationships, which could erode Unum's market share. "These are precisely the types of claims that have been found to independently buttress the legal presumption of harm in trade secrets cases." Optos, Inc., 777 F.Supp.2d at 241 (citing Schawbel Corp. v. Conair Corp., 122 F.Supp.2d 71, 83-84 (D. Mass. 2000)).

### 4. The Equities Are in Unum's Favor.

Unum's likelihood of success on the merits and irreparable harm tips the balance of equities in its favor as to its demand that Defendant return all Trade Secret Information. If the injunction is granted, Defendant would be required to return Unum's Documents and any and all additional documents or files containing Trade Secret Information, together with a representation that he and his counsel have not altered, destroyed, copied, maintained, or disclosed any of Unum's Documents or additional documents or files containing Trade Secret Information. Since Defendant has no right to retain or copy Unum's Documents, and/or any other additional documents or files containing Unum's Trade Secret Information, there are no concerns of equity that weigh in favor of Defendant being allowed to retain such information. See e.g., id. (ordering

defendant to "provide a complete accounting of all the trade secret information" that was misappropriated and "return the same" to the plaintiff).

### 5. An Injunction Furthers Public Interest.

An injunction in this matter would be in the public interest. The DTSA establishes criminal penalties for misappropriation of trade secrets, which "demonstrates Congress's belief that such conduct is harmful not only to the individual or entity whose secrets are purloined, but also to the public. Theft of trade secrets, and allowing thieves to retain and use the confidential information they purloined, undermines business development and stability; preventing such conduct is in the public's interest." Earthbound Corp., 2016 WL 4418013, at *10. Likewise, "Massachusetts has a clear public policy in favor of strong protections for trade secrets." Optos, Inc., 777 F.Supp.2d at 241.

Moreover, it is highly likely that Unum's Laptop and Unum's Documents contain Confidential Customer Information and Confidential Employee Information. Since such information includes personal information of Massachusetts residents, it is of critical importance that Unum be granted an ability to review the files on Unum's Laptop and for Unum's Documents to be returned to Unum so that Unum may evaluate the contents thereof and determine if it is required to provide notice to such Massachusetts residents and/or the Massachusetts Attorney General under the Massachusetts Privacy Act. It favors the public interest for Unum to be allowed to make such evaluations and, if required, provide such notice in compliance with Massachusetts law.

In addition, it is very likely that Unum's Laptop and Unum's Documents contain protected health information of Unum's customers. In fact, it is noteworthy that Attorney Bourgeois has not represented otherwise with respect to the Unum's Documents, which are in his

possession and which he has reviewed.  In furtherance of the public interest, Unum's Documents must be returned to Unum and Unum must be permitted to review a mirrored copy of Unum's Laptop prior to Defendant, so that it may evaluate the contents of the Documents and Laptop and determine if it is required to provide notice to United States citizens regarding Defendant, and Attorney Bourgeois', unauthorized access and duplication of their protected health information, as required by the HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414.

**WHEREFORE**, for the reasons set forth above, Plaintiff, Unum Group, respectfully requests that this Court issue a preliminary injunction as requested in the Motion for Preliminary Injunction.

Respectfully submitted,

UNUM GROUP,

By its attorneys,

/s/ Amanda Marie Baer
Jonathan R. Sigel, BBO # 559850
Amanda Marie Baer, BBO #681386
Mirick, O'Connell, DeMallie & Lougee, LLP
1800 West Park Drive, Suite 400
Westborough, MA 01581
Phone: (508) 860-1474
Fax:    (508) 983-6261
jsigel@mirickoconnell.com
abaer@mirickoconnell.com

Dated:  November 3, 2016

CERTIFICATE OF SERVICE

    I, Amanda Marie Baer, hereby certify that this document(s), filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on the date referenced below.

    /s/ Amanda Marie Baer
    Amanda Marie Baer, Esq.

Dated: November 3, 2016